**E-FILED**
Wednesday, 03 February, 2016  02:33:38 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

STEVE MARTIN STEFFENSON,
　　　Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,
　　　Defendant.

Case No. 4:14-CV-04099-JEH

**Order and Opinion**

Steve Steffenson, Plaintiff, filed his application for disability insurance benefits on June 20, 2011, alleging that he became disabled on December 5, 2008. In a Notice of Disapproved Claim dated January 6, 2012, Steffenson was denied his claim. (Tr. 95-98). On January 31, 2012, Steffenson asked for a reconsideration of his claim. (Tr. 100). The Commissioner, Defendant, denied his reconsideration request on May 29, 2012.

On June 28, 2012, Steffenson filed a Request for Hearing by Administrative Law Judge. (Tr. 107-108). The hearing was held on June 19, 2013, before Administrative Law Judge (ALJ) David W. Thompson. Steffenson was present and was represented by counsel. Also testifying was Brian Paprocki, a vocational expert. The ALJ issued an unfavorable decision dated July 19, 2013. On August 28, 2013, Steffenson filed a request for Review of Hearing Decision with the Appeals Council. In a Notice of Appeals Council Action dated September 25, 2014, the Appeals Council denied Steffenson's request for review. Having exhausted his administrative remedies, Steffenson timely filed his Complaint in this action on November 10, 2014, pursuant to 42 U.S.C. §405(g).

The Plaintiff having filed his Motion for Summary Judgment (D. 11) and the Defendant having filed her Motion for Summary Affirmance (D. 14), the matter is ripe for ruling.[1] For the reasons stated herein, the Plaintiff's motion is GRANTED and the Defendant's motion is DENIED.[2]

## I

Steffenson alleged disability based upon both physical and mental severe impairments. The ALJ found that Steffenson in fact had severe physical impairments of "post right hand injury, low vision in the left eye, and post thyroid removal." (D. 6 at ECF p. 18). This finding is not in dispute. Regarding severe mental impairments, Steffenson asserted severe mental impairments of stress, panic attacks, depression, and seclusion. The ALJ, however, found no severe mental impairments. It is this finding which the Plaintiff now challenges.

Based upon the allegations of mental impairments, the Commissioner had Steffenson examined by Stephen Singley, a licensed psychologist. (D. 6-2 at ECF pp. 49-51). Dr. Singley opined that Steffenson suffered from a mood disorder with anxiety features due to his physical/medical impairments. Dr. Singley explicitly stated that Mr. Steffenson's "current personality presentation seems on the anxious side, with over-talking and some difficulty focusing and concentrating adequately." *Id*.

Thereafter, Dr. Howard Tin, Psy. D., an agency psychologist, was tasked with providing his expert medical opinion of the effects of Steffenson's mental impairments on his ability to perform work related functions. Dr. Tin, like Dr. Singley, opined that Steffenson suffers from a mood disorder with anxiety. (D. 6-2 at ECF p. 57). Dr. Tin also opined that Steffenson suffers from moderate limitations in his social functioning and in concentration, persistence or pace. (D. 6-2 at ECF p. 64).

---

[1] Citations to the record in this case are to the Docket Number of the relevant document as well as specific CM/ECF page numbers where applicable, in the following format: (D. # at ECF p. #).
[2] The parties consented to a U.S. Magistrate's  jurisdiction in this case. (D. 16).

He further opined specific moderate limitations in Steffenson's abilities to maintain concentration and attention for extended periods; perform within a schedule, maintain regular attendance and be punctual within customary tolerances; work in proximity to others without being distracted by them, and; to interact appropriately with the general public. (D. 6-2 at ECF pp. 68-69). Dr. James Hinchen affirmed these opinions. (D. 6-2 at ECF pp. 285-286).

Notwithstanding these medical opinions, the ALJ declined to find any severe mental impairments. (D. 6 at ECF p. 20). In doing so, the ALJ looked to the four broad functional areas set out in the disability regulations for evaluating mental disorders, known as the "paragraph B" criteria. *Id.* These four areas include activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R., Part 404, Subpart P, Appendix 1.

In the area of activities of daily living, both the medical opinions and the ALJ concluded that Steffenson's limitations were only mild.  Likewise, the medical opinions and ALJ were in agreement that Steffenson had no episodes of decompensation. However, the ALJ's opinion and those of the medical practitioners diverged in the other two areas.

Specifically, in the area of social functioning, the medical opinions indicated "moderate" limitations. (D. 6-2 at ECF p. 64). The ALJ, however, characterized Steffenson's functioning in this area as "mild," apparently because: 1) he lives with his mother, girlfriend, and girlfriend's child; 2) he goes to the grocery store; 3) he was "friendly and pleasant" with Dr. Singley; and 4) he "likes to talk." (D. 6 at ECF p. 21).

In the area of maintaining concentration, persistence, or pace, the medical opinions indicated "moderate" limitations. (D. 6-2 at ECF p. 64). The ALJ, however, characterized Steffenson's functioning in this area as "mild" because: 1) he drives a car; 2) he does household chores; 3) grocery shops; 4) he cares for his girlfriend's child; 5) he watches TV; and 6) he manages his finances.

3

Having found no severe mental impairments, the ALJ did not include any mental limitations in his RFC . The Plaintiff argues that the ALJ erred in failing to find any severe mental impairments and, consequently, the RFC in this case is not supported by substantial evidence. The Commissioner responds that the ALJ's reading of the record was reasonable and, even if he did err in failing to find any severe mental impairments, the error was harmless.

**II**

**A**

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986). The establishment of disability under the Act is a two-step process.

4

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of

substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, the Plaintiff essentially alleges error at Step 2, although much of the parties' arguments are focused on the RFC formulated at Step 4. Specifically, the Plaintiff alleges that the ALJ erred by declining to find a severe mental impairment at Step 2. This error at Step 2 resulted in an improperly formulated RFC at Step 4. In other words, the allegedly erroneously formulated RFC at Step 4 was *caused* by the error at Step 2 when the ALJ made the determination regarding severe impairments. Consequently, the critical question before the Court is whether the ALJ erred at Step 2. If not, then there is no error at Step 4.  If so, then the RFC formulated at Step 4 is *ipso facto* erroneous as well, according to the Plaintiff.

**B**

Step 2 is "merely a threshold requirement." *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015), quoting *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (citation omitted; quoting *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). SSR 96-3p provides that if an individual's impairment does not appear from the objective medical evidence to be severe, then the ALJ must consider the limitations and restrictions caused by the individual's symptoms. *Id.* at 649. Critically, "[i]f these additional considerations cause 'more than minimal effect on an individual's ability to do basic work activities, the ALJ must find that the imparment(s) is severe *and proceed to the next step in the process* even if the objective medical evidence would not in itself establish that the impairment(s) is severe." *Curvin*, 778 F.3d at 649, quoting SSR 96-3p (emphasis in original). For mental impairments, "[m]oderate limitations under the B criteria are suggestive of a severe impairment and the ALJ should account for such limitations in setting [the] mental RFC." *Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1091 (E.D. Wis. 2009), citing *Elkins v. Astrue*, 2009 WL 1124936, at *9-

11 (S.D. Ind. Apr. 24, 2009); *Rasnake v. Astrue*, 2009 WL 1085969, at *14 (N.D. Ind. Apr. 22, 2009).

An error at Step 2 can, however, nevertheless be harmless, provided the ALJ considers all of a claimant's severe and non-severe impairments when determining the RFC immediately after Step 3. *Curvin*, 778 F.3d at 649. However, if an ALJ fails to factor those severe and non-severe mental limitations into the RFC, then the error cannot be harmless.  *Ramos*, 674 F. Supp. 2d at 1091.

C

Here, the ALJ erred by failing to find at Step 2 that Steffenson had severe mental impairments. First, all of the un-contradicted medical opinions in the record indicated that Steffenson had "moderate" limitations in social functioning and in concentration, persistence, or pace. This medical evidence alone was enough to warrant the ALJ accounting "for such limitations in setting [the] mental RFC." *Ramos*, 674 F. Supp. 2d at 1091.

Second, the ALJ cited insufficient evidence to support his conclusion that Steffenson's limitations in social functioning and in concentration, persistence, or pace were only "mild," in contravention of the medical opinions. For example, regarding social functioning, the ALJ without explanation points to the following facts as apparently supporting a finding of only mild limitations to social functioning: 1) he lives with his mother, girlfriend, and girlfriend's child; 2) he goes to the grocery store; 3) he was "friendly and pleasant" with Dr. Singley; and 4) he "likes to talk." (D. 6 at ECF p. 21). How any of these most basic of social functions undermine the medical opinions of "moderate" limitations the ALJ does not explain. One can easily imagine an individual with very severe, marked limitations in social functioning who lives with other people, goes to a grocery store, is capable of being friendly and pleasant *on one occasion* at a doctor's visit, and likes to talk. The notion that these facts give the ALJ a basis to reject the medical opinions and find only mild restrictions in social functioning is absurd.

The same is true for the facts cited by the ALJ regarding concentration, persistence, or pace. In rejecting the medical opinions that Steffenson's limtations in these areas are "moderate," the ALJ cites the following facts: 1) Steffenson drives a car; 2) he does household chores; 3) grocery shops; 4) he cares for his girlfriend's child; 5) he watches TV; and 6) he manages his finances.  Again, one can do all of these activities and have "moderate" limitations in concentration, persistence, or pace. The ALJ nowhere explains why these facts support only "mild" limitations. Nor does he discuss the extent to which the Plaintiff engages in such activities. What does it mean to do household chores? Which chores? For how long? What does it mean to grocery shop? How often? For what? With others or alone? What does being able to watch TV have to do with *anything*?

And, as the Plaintiff argues, there were plenty of facts in the record which supported a finding of moderate limitations.  For instance, even the ALJ noted that Dr. Singley stated that Steffenson presented "as anxious with over-talking, and some difficulty focusing and concentrating adequately." (D. 6 at ECF p. 21). At the hearing before the ALJ, the ALJ noticed the same issues when he admonished Steffenson pay attention to the questions he was asking because he was "telling me lots of story [sic]" unrelated to his questions. (D. 6 at ECF p. 54).

Although it is true that an ALJ need not adopt any specific medical opinion in full, an ALJ's rejection of medical opinions can leave an "evidentiary deficit" where "the rest of the record does not support" the ALJ's findings. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Such is the case here where the facts cited by the ALJ in rejecting the medical opinions simply do not support his conclusions. At best, the facts cited by the ALJ are ambiguous and the ALJ needed to provide *some* reasoning explaining how the facts he cited supported his rejection of the medical opinions.  In other words, the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusion." *Suide v. Astrue*, 2010 WL 1508510, at *6 (7th Cir. Apr. 16, 2010).

**D**

The error at Step 2 is not harmless, for the ALJ failed to incorporate any mental impairments into the RFC. *Ramos*, 674 F. Supp. 2d at 1091 (if an ALJ fails to factor those severe and non-severe mental limitations into the RFC, then the error cannot be harmless).  Of course, the error at Step 2 does not mean that Steffenson is necessarily disabled either.  Rather, a remand in necessary for the ALJ to properly determine Steffenson's severe impairments, both physical and mental. The ALJ must then reformulate an RFC based upon all of the Plaintiff's impairments and proceed with the other steps in the process.  This Court has no opinion on whether that process will result in a conclusion that Steffenson is disabled.

**III**

For the reasons set forth above, the Plaintiff's Motion for Summary Judgment (D. 11) is GRANTED, the Commissioner's Motion for Summary Affirmance (D. 14) is DENIED, and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the ALJ to, consistent with this Order and Opinion, reconsider Step 2 and the Steps which follow it. The Clerk's Office is hereby directed to enter Judgment in favor of the Plaintiff and against the Defendant.  This matter is now terminated.

*It is so ordered.*

Entered on February 2, 2016

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE